**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**PAUL S. HUDSON,**

                              **Appellant,**

        **v.**                                              **1:09-CV-1417**
                                                            **1:09-CV-1418**
                                                                **(FJS)**

**GREGORY G. HARRIS,**
*Chapter 7 Trustee*,

                              **Trustee.**

_____

**APPEARANCES**                          **OF COUNSEL**

**EMERY, CELLI, BRINCKERHOFF &**          **RICHARD D. EMERY, ESQ.**
**ABADY, LLP**                            **DEBRA L. GREENBERGER, ESQ.**
75 Rockefeller Plaza                      **SARAH NETBURN, ESQ.**
20th Floor
New York, New York 10019
Attorneys for Appellant

**HARRIS, CONWAY & DONOVAN, PLLC**        **GREGORY C. HARRIS, ESQ.**
The Patroon Building
5 Clinton Square
Albany, New York 12207
Attorneys for Trustee

**SCULLIN, Senior Judge**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

        In an August 2, 2007 Memorandum-Decision and Order, this Court remanded this action

to the bankruptcy court to evaluate the impact, if any, of this Court's rulings in *Corvetti v.*

*Hudson* and *Hudson v. Corvetti* on the bankruptcy court's decision to deny Paul S. Hudson,

debtor-defendant, a discharge in bankruptcy.  On November 17, 2009, the bankruptcy court

issued a Memorandum-Decision and Order in which it determined that (1) this Court's

subsequent rulings in *Corvetti v. Hudson* and *Hudson v. Corvetti* did not impact the denial of Mr.

Hudson's discharge, and (2) Mr. Hudson was not entitled to vacatur of the bankruptcy court's

2001 decision denying his discharge.  *See generally In re Hudson*, 420 B.R. 73 (Bankr.

N.D.N.Y. 2009)

Currently before the Court is Mr. Hudson's appeal of the bankruptcy court's November

17, 2009 Memorandum-Decision and Order denying him discharge from bankruptcy.


## II. BACKGROUND

Mr. Hudson, an attorney licensed to practice in New York, commenced the instant

bankruptcy case by filing a Chapter 7 petition on November 12, 1999, in Maryland (the "Main

Case").  Mr. Hudson testified that he decided to file for bankruptcy because of several lawsuits

pending in New York that Richard Corvetti had filed on his own behalf or on behalf of

Washington 1993, Inc. ("Washington 1993").[1]  This included a lawsuit for fraudulent

conveyance of the settlement money that Mr. Hudson received in an Ohio wrongful death

lawsuit against Pan Am Airlines in connection with the death of his daughter in the Lockerbie,

Scotland terrorist attacks (the "wrongful death case").  By filing for bankruptcy, Mr. Hudson

effectively stayed all proceedings in the New York courts.  Mr. Hudson, however, did not list

these lawsuits on his Statement of Financial Affairs when he filed for bankruptcy.

On January 12, 2000, Mr. Corvetti filed several motions in the Maryland bankruptcy

---

[1] Messrs. Hudson and Corvetti were business partners in a real estate venture known as
Washington 1993, Inc.  As a result, all actions that Washington 1993, Inc. brought were closely
aligned with Mr. Corvetti's interests.

court, including a motion for change of venue and three motions seeking relief from the automatic stay.  In the venue motion, Mr. Corvetti alleged that Mr. Hudson failed to disclose settlement proceeds to which Mr. Hudson was allegedly entitled in the wrongful death case and that Mr. Hudson had conveyed this suit to his sons.

Meanwhile, Washington 1993 brought this adversary proceeding against Mr. Hudson objecting to his discharge pursuant to 11 U.S.C. § 727(a)(4)(A),[2] relying primarily on Mr. Hudson's failure to schedule the transfer of $102,902.76 and $37,000 to his sons as assets/revocable transfers in his petition and objecting to certain debts pursuant to section 523.[3] Washington 1993 also alleged that Mr. Hudson's wrongful death claim was worth more than the zero value that he had assigned to it.

On March 14, 2000, the Maryland court granted Mr. Corvetti's change of venue motion and transferred the Chapter 7 case and the adversary proceeding to the Northern District of New York.  On the same day that Mr. Hudson's bankruptcy filing was transferred from the Maryland

---

[2] Washington 1993 filed this adversary proceeding prior to October 17, 2005, the date on which most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") became effective.  Thus, all statutory references herein are to the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330 (2004), unless otherwise indicated.

[3] Although section 523 and section 727 claims can be maintained in the same action, they are essentially separate lawsuits.  In a section 523 discharge proceeding, a creditor seeks to collect only its own debt.  In objecting to discharge under section 727, however, the creditor assumes a role similar to that of a trustee – "'protecting the integrity of the bankruptcy system by denying discharge to debtors who engage in objectionable conduct that is of a magnitude and effect broader and more pervasive than a fraud on, or injury to, a single creditor.'"  *In re Taylor*, 190 B.R. 413, 416 (Bankr. D. Colo. 1995) (quotation and other citation omitted).  "'Section 727 is the gatekeeper for allowing only honest debtors the extraordinary relief afforded by the Bankruptcy Code.  It is a guardian of the bankruptcy system; it proscribes dishonest, deceptive, and disingenuous debtor conduct that is part of or related to the bankruptcy system[.]'"  *Id.* (quotation omitted).

court, more than one month after the instant adversary proceeding was filed and served, more than two months after the filing and service of the change of venue motion, and more than four months after the petition date, Mr. Hudson filed his Second Amended Statement of Financial Affairs.[4]  In this statement, Mr. Hudson listed the lawsuits involving him and either Mr. Corvetti or Washington 1993, including the fraudulent conveyance action, which were pending when he filed his bankruptcy petition.

After transfer of the case and adversary proceeding to this District, Washington 1993 filed a motion for partial summary judgment in the adversary proceeding.  Washington 1993 alleged that Mr. Hudson's failure to list any pending litigation he had involving either Washington 1993 or Mr. Corvetti in his original Statement of Financial Affairs amounted to fraud under section 727(a)(4)(A).  In opposition to the partial summary judgment motion, Mr. Hudson pointed out that the section 727(a)(4)(A) cause of action stated in the complaint did not allege a failure to list lawsuits on the Statement of Financial Affairs.  As a result, Mr. Hudson argued that, because the complaint did not allege that particular failure, he lacked notice and that, therefore, the court could not grant section 727(a)(4)(A) relief on those grounds.  Mr. Hudson further argued that any failure to list the lawsuits on his Statement of Financial Affairs was a clerical error, and he attached the affidavit of his former bankruptcy counsel, James Greenan, Esq., explaining the omission of the lawsuits.  The bankruptcy court ultimately denied summary judgment, finding that questions of fact existed and informed both parties that it wanted to hear Mr. Hudson's explanation regarding his failure to list the lawsuits that

---

[4] Although this document is labeled as a second amendment, the docket does not show that Mr. Hudson ever filed a prior Amended Statement of Financial Affairs.

Washington 1993 and Mr. Corvetti had pending against him.

At trial, Mr. Greenan testified that he had advised Mr. Hudson that Maryland was a proper venue for his case and subsequently filed a "bare bones" petition on November 12, 1999. Mr. Greenan explained that a bare bones petition provided the debtor's name, address, and a list of creditors, but not lawsuits, and that he and Mr. Hudson decided to file in such a manner to stay a trial on the following Monday involving Washington 1993. Mr. Hudson faxed Mr. Greenan information for his bankruptcy filing, including a two-page list of lawsuits, which included the lawsuits involving Mr. Corvetti and Washington 1993. Mr. Greenan did not need the list for filing the bare bones petition and, thus, did not use it.

After he filed the bare bones petition, Mr. Greenan sent Mr. Hudson a questionnaire that his firm required its bankruptcy clients to fill out with all the information necessary for filing their petition and Statement of Financial Affairs. Mr. Greenan did not use the list of lawsuits that Mr. Hudson faxed to him to prepare the Statement of Financial Affairs because he had requested that Mr. Hudson provide the information on the questionnaire. Mr. Greenan further testified that Mr. Hudson provided him with a "less complete" list of pending lawsuits in his responses to the questionnaire, omitting all the suits involving Mr. Corvetti and Washington 1993. As a result, Mr. Greenan did not include those lawsuits in the Statement of Financial Affairs; and Mr. Hudson did not add them after he spent several hours reviewing it. Mr. Hudson later testified that he had provided an additional page with his questionnaire that listed the missing lawsuits.

A.      The 2001 bankruptcy court decision

After considering the voluminous pre-trial submissions, trial testimony, documentary evidence, and post-trial memoranda, the bankruptcy court denied Mr. Hudson a discharge pursuant to section 727(a)(4)(A).  *See Washington 1993, Inc. v. Hudson (In re Hudson)*, No. 00-11683, Adv. Pro. No. 00-90091 (Bankr. N.D.N.Y. Aug. 21, 2001).  Specifically, the bankruptcy court found that

> [Mr. Hudson] had intentionally failed to include the information regarding the wrongful conveyance lawsuit on his bankruptcy schedules in order to prevent the Trustee, and thus [Mr. Hudson's] creditors, from realizing any of the potential money from that lawsuit.  The Bankruptcy Judge based his decision primarily on: 1) Hudson's knowledge of the filing requirements for a bankruptcy petition as shown by his previous bankruptcy filings; 2) Hudson's failure to include the lawsuit in his Statement of Financial Affairs and schedules; 3) Hudson's failure to amend his Statement of Financial Affairs following the motion for change of venue which included a specific allegation regarding his failure to include the statement; 4) Hudson's failure to amend his financial statement following three "stay relief motions" by Corvetti which included specific allegations regarding the unlawful conveyance lawsuit; and 5) Hudson's failure to amend his financial statement after Corvetti began an adversary proceeding in February 2000 which included various allegations regarding Hudson's failure to schedule the transfers as assets, including a claim under 11 U.S.C. § 727(A)(4) which again specifically referenced the lawsuit.

*Hudson v. Washington 1993, Inc.*, No. 3:01-CV-1474, Dkt. No. 64, at 2-3 (N.D.N.Y. Sept. 27, 2002) (order affirming bankruptcy court's decision).[5]  Since the bankruptcy court ultimately denied Mr. Hudson's discharge, the section 523 causes of action were rendered moot.

**B.      The 2002 district court (McAvoy, J.) affirmance**

---

[5] The Court notes that this is Judge McAvoy's summary of the bankruptcy court's conclusions.

Mr. Hudson appealed the 2001 bankruptcy court decision denying his discharge to the district court; the district court affirmed that decision.  *See id.*  In his appeal, Mr. Hudson argued that the bankruptcy court had made three discernable errors: (1) the court impermissibly denied his discharge based on grounds not pled in the complaint; (2) the court rendered its decision after improperly taking judicial notice of documents outside of the record; and (3) the decision was not based on the record and amounted to clear error.  *See id.* at 1-2.  The district court rejected all three arguments.

**C.      Settlement negotiations with the Trustee**

After the district court affirmed the 2001 bankruptcy court decision denying Mr. Hudson's discharge, Mr. Hudson, the Trustee, and members of Mr. Hudson's family entered into settlement negotiations to resolve all outstanding litigation, controversies and claims against Mr. Hudson and/or his family.  The Stipulation of Settlement specifically provided for the Trustee's release of Mr. Hudson and members of his family in exchange for payment of $36,500 to the estate and one-fifth of any recovery received from the wrongful death action.  Mr. Hudson filed a motion seeking the bankruptcy court's approval of the proposed settlement, and Mr. Corvetti opposed and sought various forms of relief.  At the March 27, 2003 hearing on Mr. Hudson's motion, it was apparent that the Trustee and Mr. Hudson were not in complete agreement, despite the fact that both had signed the Stipulation of Settlement.  On May 20, 2003, the bankruptcy court denied both parties' motions without prejudice.

**D.      The 2003 district court (McAvoy, J.) remand**

Mr. Hudson filed a motion for reconsideration of the district court's September 22, 2002 Order, affirming the denial of his discharge, and informed the district court of the settlement negotiations between him and the Trustee.  *Hudson*, No. 3:01-CV-1474, Dkt. No. 125 at 3.  As a result, the district court granted Mr. Hudson's motion for reconsideration and remanded the matter with the following specific instructions to the bankruptcy court:

> This "new evidence" [of potential settlement] was not, however, available to the bankruptcy court in making its decision to deny Hudson a discharge.  The parties have represented that the bankruptcy court is currently deciding w[h]ether to approve settlement of the section 727 claims.  Settlement and discharge often go hand in hand.  The Court finds that the bankruptcy court should be given the opportunity, in the first instance, to determine whether the settlement involving the Wrongful Death lawsuit affects the determination that the debtor should not be given a discharge.  *See In re Maynard*, 269 B.R. 535, 541-42 (D. Vt. 2001) (discussing unique position of bankruptcy courts in settlement and discharge proceedings).
>
> Consequently, on reconsideration, the Court determines that the matter should be **remanded** to the bankruptcy court for further determination.

*Hudson*, No. 3:01-CV-1474, Dkt. No. 125 at 3-4.

**E.      Hudson-Corvetti settlement and related litigation**

On December 28, 2001, after the bankruptcy court had issued its decision denying Mr. Hudson's discharge, but before the district court affirmed that decision, the district court approved the settlement of Mr. Corvetti's claims against Mr. Hudson that were implicated in the section 523 causes of action that Washington 1993 had filed, which the bankruptcy court had never considered.  The district court also ordered that "[t]he objection to discharge under 727(a) shall proceed on appeal to this court."  *Hudson*, No. 3:01-CV-1474, Dkt. No. 24 at 1.  This order

resulted in a new line of litigation between Mr. Corvetti and Mr. Hudson because the district

court's conclusion that the section 727(a) cause of action should proceed contradicted the

settlement agreement, which stated that "[Mr.] Corvetti shall not oppose [Mr.] Hudson's appeal

of the Decision in regards to the denial of discharge pursuant to § 727[.]" *See* Settlement

Agreement of March 7, 2002.  Mr. Corvetti believed that the district court's order indicated that

he could continue to pursue the section 727 cause of action, but Mr. Hudson disagreed.  Thus,

the parties petitioned the district court for clarification of its order.

On April 8, 2002, the district court responded in a written decision holding that "[t]his

Court's order did not in any way approve settlement of the 11 U.S.C. § 727 claims.  All language

in the approved revised settlement should be construed as not approving of any such settlement.

Consequently, should Mr. Corvetti wish to oppose Mr. Hudson's appeal on the section 727

claims, he may do so."  *Hudson*, No. 3:01-CV-1474, Dkt. No. 47 at 3.  On November 20, 2002,

the district court issued a Corrected Order for Partial Settlement on Appeal ("Corrected Order"),

which provided that

> 1. The Bankruptcy Adversary is settled with regards to all
>    objections to discharge which arise under 11 U.S.C.
>    Section 523(a), and
>
> 2. The objection to discharge shall proceed on appeal to this
>    Court . . .
>
> 3. The payment of the settlement, the signing of the
>    Settlement Agreement, a copy of [which] is designated as
>    Attachment "B" in the Motion to Settle Matter Pending on
>    Appeal dated October 15, 2001, and the exchange of
>    releases is approved.

*Hudson*, No. 3:01-CV-1474, Dkt. No. 80.  This Corrected Order, however, neither explicitly

stated that Mr. Corvetti could pursue the section 727 claim, nor did it reference the court's April

2002 opinion that permitted him to do so.

In light of this ambiguity, on December 4, 2003, Mr. Corvetti once again requested clarification from the district court, asking whether he was forestalled from being heard on the appeal of the denial of Mr. Hudson's discharge. *Hudson*, No. 3:01-CV-1474, Dkt. No. 132.  The district court summarily denied his request for clarification.  Mr. Corvetti then brought the issue to the bankruptcy court requesting (1) a declaration that he could oppose Mr. Hudson's discharge notwithstanding the non-opposition provisions in the Settlement Agreement; (2) a declaration that the parties' Settlement Agreement was void; and (3) an order enjoining the state court from adjudicating Mr. Hudson's breach-of-contract claim.  The bankruptcy court held that, had the district court intended to reverse the bankruptcy court's decision permitting Mr. Corvetti to pursue the section 727 cause of action on appeal, it would have explicitly said so in the Corrected Order.[6]  The bankruptcy court memorialized this finding in a written decision on March 17, 2005, thus allowing Mr. Corvetti to continue to oppose Mr. Hudson in the proceedings that the 2003 district court remand had triggered.

**F.     The 2005 bankruptcy court decision on remand**

On December 30, 2005, the bankruptcy court issued its decision resolving the 2003 district court remand, resolving the narrow question of whether Mr. Hudson's potential settlement with the Trustee justified reconsideration of the bankruptcy court's denial of Mr. Hudson's discharge.  Mr. Corvetti continued to oppose Mr. Hudson's discharge on the remand.

---

[6] The bankruptcy court also found that the rest of the parties' settlement agreement was enforceable.  Mr. Corvetti appealed to this Court, which affirmed the bankruptcy court's decision. *See Corvetti v. Hudson*, No. 1:06-CV-537, Dkt. No. 14 (N.D.N.Y. July 9, 2007).

The bankruptcy court ultimately found that the parties failed to reach a settlement and that, as a result, there was no basis to modify the 2001 bankruptcy court's decision under the district court's narrow instruction.  Furthermore, the bankruptcy court found that Mr. Hudson's attempts to re-characterize the scope of the remand were frustrated by the "law of the case" doctrine, which limits the bankruptcy court's evaluation on remand to only those issues that the district court mandates.

**G.      The district court bars Mr. Corvetti from opposing discharge**

While the 2003 district court remand was pending, Mr. Hudson appealed the bankruptcy court's March 17, 2005 decision allowing Mr. Corvetti to continue to be heard in connection with the appeal of the section 727 cause of action to this Court.  On July 9, 2007, this Court reversed the bankruptcy court's decision that the non-opposition clause in the settlement of the section 523 claims was unenforceable.  *Corvetti v. Hudson*, Nos. 1:05-CV-472, Dkt. No. 45 at 10; 1:05-CV-560, Dkt. No. 11 at 10. (N.D.N.Y. July 9, 2007).  The Court determined that the clause was presumed enforceable in the absence of contrary language in the district court's Corrected Order.

**H.      This Court's 2007 remand**

On August 2, 2007, having resolved the question of whether Mr. Corvetti could be heard on the appeal of the section 727 cause of action, this Court issued an order resolving Mr. Hudson's appeal of the 2005 bankruptcy court decision on remand.  *See Washington 1993, Inc. v. Hudson*, No. 1:06-CV-253, Dkt. No. 20 (N.D.N.Y. Aug. 2, 2007).  The Court held that,

> [i]n light of the Court's ruling that Mr. Corvetti cannot oppose Mr.
> Hudson's § 727 discharge, the Court finds that it is appropriate for

> the Bankruptcy Court to determine in the first instance what effect,
> if any, the District Court's subsequent decisions in *Hudson v.
> Corvetti* and *Corvetti v. Hudson* have on the Bankruptcy Court's
> decision to deny Mr. Hudson discharge.

*Id.* at 4-5.  As such, the Court remanded the matter to the bankruptcy court for "further

proceedings consistent with this decision."  *Id.* at 5.

I.      **The 2009 bankruptcy court decision on remand**

On remand, Mr. Hudson presented three arguments justifying vacatur of the 2001

bankruptcy court decision denying him a discharge.  First, he argued that certain alleged facts

constituted material developments in the case and counseled in favor of granting him a

discharge.  Specifically, he asserted that Mr. Corvetti supported issuance of his discharge and

had withdrawn all claims and arguments opposing his discharge and that there were no

remaining creditors objecting to discharge.  Second, Mr. Hudson argued that the bankruptcy

court should permit him to submit new evidence in the adversary proceeding that supported

granting him a discharge.  Third, Mr. Hudson argued that the bankruptcy court should vacate its

2001 decision because of exceptional circumstances, including the potential harm to his career

and livelihood, the settlement with Mr. Corvetti and the alleged absence of any other objector to

his discharge, and because of the potential incorrectness of its 2001 decision.  Alternatively, Mr.

Hudson argued that, if the bankruptcy court determined that it could not vacate its 2001 decision,

it should simply modify it and grant him a discharge.  On November 17, 2009, in a forty-four

page decision, the bankruptcy court denied Mr. Hudson's motion to vacate its 2001 decision

denying him discharge.

The bankruptcy court first held that the district court's decisions in the adversary

proceeding since the 2001 bankruptcy court decision did not warrant revoking the denial of Mr.

Hudson's discharge.  *See Washington 1993, Inc. v. Hudson (In re Hudson)*, 420 B.R. 73, 86-89

(Bankr. N.D.N.Y. 2009).  The bankruptcy court noted that this Court's decision remanding the

proceeding did not find fault with the bankruptcy court's previous application of the law-of-the-

case doctrine.  *See id.* at 88-89.  As such, the court held "that the district court's subsequent

rulings in the litigation between Messrs. Hudson and Corvetti have no appreciable impact on its

findings and conclusions."  *Id.* at 88 (footnote omitted).

     Thereafter, the bankruptcy court addressed what it perceived to be Mr. Hudson's

arguments that extended beyond the scope of the question presented on remand.  *See id.* at 89.

First, the bankruptcy court held that Mr. Corvetti's non-opposition to discharge and withdrawal

*nunc pro tunc* of all prior statements, arguments, and papers did not justify discharge.  *See id.*

The bankruptcy court held that Mr. Hudson's settlement with all known creditors, post trial, did

not necessitate revocation of a decision denying his discharge and subsequent issuance of his

discharge.  *See id.* at 89-92.  The bankruptcy court noted that "[t]his proposition strikes a blow at

the indelibility of judicial findings positing that if the parties reach a private accommodation,

then a judicial determination should be deemed void and vacated."  *Id.* at 89.  Although the

bankruptcy court believed this argument to be violative of the law-of-the-case doctrine because it

was beyond the scope of the remand, it still addressed its merits.  The bankruptcy court noted

that Mr. Hudson was correct that courts favor settlement.  The bankruptcy court, however, took

issue "with the proposition that settlement years after a decision was rendered should necessitate

revocation of that decision and subsequent issuance of discharge.  Such a paradigm potentially

frustrates the finality of judgments and suggests the commoditization of justice."  *Id.* at 90.

Further, citing an analogous case from the Eastern District of California, the bankruptcy court held that "'debtors should not be allowed to purchase a discharge to which, as a matter of law, they are not entitled.'" *Id.* at 91 (quoting *Jacobson v. Robert Speece Props., Inc. (In re Speece)*, 159 B.R. 314, 323 (E.D. Cal. 1993)).  Moreover, the bankruptcy court held that, "[w]hile the ultimate goal of bankruptcy is to afford the debtor a fresh start, this court – in line with the Supreme Court and the Second Circuit – does not accept the proposition that judicial findings of fraud and bad faith, which were affirmed on appeal, may be negotiated away as though they were little more than advisory statements." *Id.* at 92 (citing *Bancorp*, 513 U.S. at 28-29, 115 S. Ct. 386; *Microsoft Corp. v. Bristol Tech., Inc.*, 250 F.3d 152, 154 (2d Cir. 2001); *Teamsters Council*, 1998 WL 404229, at *1; *Speece*, 159 B.R. at 321).

Next, the bankruptcy court held that Mr. Hudson failed to present any new evidence justifying discharge or to support a finding that the bankruptcy court had incorrectly applied the law-of-the-case doctrine.  First, the bankruptcy court noted that a party seeking relief from a judgment under Rule 60(b)(2), (c) of the Federal Rules of Civil Procedure could introduce such new evidence only if it presented that evidence to the court within a year after the entry of judgment.  *See id.* at 92.  However, even assuming that the "new evidence" was admissible, the bankruptcy court found that it would not have any impact on its decision denying discharge "because it is not substantially different from the evidence presented at trial." *Id.* at 93.  This evidence included an affidavit from Mr. Greenan, Mr. Hudson's trial attorney at the 2001 trial, in which Mr. Greenan attempted to explain the information missing from Mr. Hudson's Statement of Financial Affairs.  *See id.* at 93-95.  The bankruptcy court found this evidence unpersuasive, however, because Mr. Greenan had testified at trial regarding most of the matters included in his

-14-

affidavit, and the new information now included failed to persuade the bankruptcy court that it had reached the wrong conclusion in 2001.  *See id.* at 94.

The bankruptcy court also discussed the affidavit of Kenneth Varley, Mr. Corvetti's trial counsel, in which Mr. Varley averred that he and Mr. Corvetti were provided with timely notice of the bankruptcy filing and that the Corvetti lawsuits were communicated to both the United States Trustee and the Chapter 7 Trustee when they were served with the papers seeking a change of venue and the lifting of the automatic stay.  *See id.* at 95-96.  The bankruptcy court found unpersuasive Mr. Hudson's argument that no inference of fraudulent intent could be drawn from his omission because the omission was promptly brought to the trustees' attention.  *See id.* at 95.  The bankruptcy court noted that Mr. Hudson's alleged disclosure to the bankruptcy court and trustees did not occur for several months and that it had taken notice of this disclosure in its 2001 decision denying discharge.  *See id.*  Moreover, the bankruptcy court noted that "the value of this evidence remains questionable, as none of these docket entries had the specific purpose of bringing the omission to the attention of the Trustee, but did so only indirectly."  *Id.*  Further, the bankruptcy court noted that two months elapsed before the first disclosure on January 24, 2000, and the amendment of the Statement of Financial Affairs on March 14, 2000, which belied Mr. Hudson's claim that his intention was to disclose his omission to the bankruptcy court and other parties.  *See id.*  Additionally, the bankruptcy court noted that in 2001 it had addressed Mr. Hudson's argument that his decision to file this matter in Maryland, rather than New York, was not part of a "pattern of falsity"; and, again, the bankruptcy court found his arguments unpersuasive.  *See id.* at 96.

Thereafter, the bankruptcy court held that Mr. Hudson failed to present an appropriate

-15-

basis for vacatur of its 2001 decision denying discharge.[7]  *See id.* at 97-101.  The court discussed

the dangers of vacatur as a result of post-trial settlement in the context of section 727 actions.

Specifically, the court noted that permitting vacatur after a judgement denying discharge would

create an incentive for the debtor to hide property at the time he files for bankruptcy, knowing

that if he loses any ensuing objection to discharge, discharge could later be awarded by handing

over the hidden property and settling the matter with his creditors.  *See id.* at 100 (citation

omitted).  Although the court found that Mr. Hudson could not present his arguments for vacatur

under Rule 60(b)(6), the court still reviewed the merits of Mr. Hudson's claims that exceptional

circumstances warranted vacatur and found them unpersuasive.  *See id.* at 101.  Mr. Hudson's

arguments for vacatur included the existence of potential harm to his career, his settlement with

Mr. Corvetti and the absence of any other objector to discharge, and the potential incorrectness

of the 2001 bankruptcy court decision.  *See id.* at 97-101.


# III. DISCUSSION

---

[7] The bankruptcy court discussed its power to vacate its previous judgment pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure.  *See In re Hudson*, 420 B.R. at 92-93. Rule 60(b)(6) provides that the court may grant a party relief from a final judgment for "any other reason that justifies relief."  Although the court recognized that this provision "'confers broad discretion on the trial court to grant relief when appropriate to accomplish justice[,]'" it also noted that "'relief under clause (6) is not available unless the asserted grounds for relief are not recognized in clauses (1)-(5).'"  *Id.* at 98 (quotations omitted).  The bankruptcy court held that, as discussed, Mr. Hudson predicated his argument on "new evidence," and therefore, his motion was properly brought pursuant to Rule 60(b)(2), which bars the admission of new evidence more than one year after the court has entered judgment.  *See id.*

**A.       Standard of review on appeal**

This Court has jurisdiction to hear the instant appeal under 28 U .S.C. § 158(a).  Rule

8013 of the Federal Rules of Bankruptcy Procedure, which sets forth the standard of review,

provides, in pertinent part, that,

> [o]n an appeal, the district court . . . may affirm, modify, or reverse
> a bankruptcy judge's judgment, order, or decree, or remand with
> instructions for further proceedings.  Findings of fact, whether
> based on oral or documentary evidence, shall not be set aside
> unless clearly erroneous, and due regard shall be given to the
> opportunity of the bankruptcy court to judge the credibility of
> witnesses.

Fed. R. Bankr. P. 8013.  Thus, the district court must uphold the factual findings of a bankruptcy

court unless they are "clearly erroneous."  A district court may find a bankruptcy court's

determination to be "clearly erroneous" when, on consideration of the record as a whole, the

court "'is left with the definite and firm conviction that a mistake has been committed.'"  *Zervos*

*v. Verizon N.Y., Inc*., 252 F.3d 163, 168 (2d Cir. 2001) (quoting *United States v. United States*

*Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948)) (other citation omitted).

Although the bankruptcy court's findings of fact are not conclusive on appeal, "the party that

seeks to overturn them bears a heavy burden."  *H & C Dev. Group, Inc. v. Miner (In re Miner)*,

229 B.R. 561, 565 (B.A.P. 2d Cir. 1999) (citation omitted).

The bankruptcy court's legal conclusions, however, are subject to *de novo* review.  *See*

*Asbestosis Claimants v. U.S. Lines Reorganization Trust (In re U.S. Lines, Inc.)*, 318 F.3d 432,

435 (2d Cir. 2003).  The court reviews mixed questions of law and fact "'either *de novo* or under

the clearly erroneous standard depending on whether the question is predominantly legal or

factual.'"  *Bay Harbour Mgmt., L.C. v. Lehman Bros. Holdings Inc. (In re Lehman Bros.*

-17-

*Holdings, Inc.*), 415 B.R. 77, 83 (S.D.N.Y. 2009) (quoting *Italian Colors Rest. v. Am. Express Travel Related Servs. Co.* (*In re Am. Express Merchants' Litig.*), 554 F.3d 300, 316 n.11 (2d Cir. 2009)).


**B.      Scope of this Court's remand**

        Under the mandate rule, the bankruptcy court must comply with the dictates of the superior court's direction. *See United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001) (quotation and other citation omitted).  To determine whether an issue is open for reconsideration on remand, "the trial court should look to both the specific dictates of the remand order as well as the broader 'spirit of the mandate.'"  *Id.* (quotation omitted).

        In its August 2, 2007 Order, this Court ordered that, "[i]n light of the Court's ruling that Mr. Corvetti cannot oppose Mr. Hudson's § 727 discharge, the Court finds that it is appropriate for the Bankruptcy Court to determine in the first instance what effect, if any, the District Court's subsequent decisions in *Hudson v. Corvetti* and *Corvetti v. Hudson* have on the Bankruptcy Court's decision to deny Mr. Hudson discharge."  *Hudson*, No. 1:06-CV-253, Dkt. No. 20 at 4-5. The bankruptcy court correctly found that "[t]he only district court ruling of potential significance was the July 9, 2007 decision holding that Mr. Corvetti was barred as of November 20, 2002 from being heard in the appeal of the 2001 [bankruptcy court decision] denying Mr. Hudson's discharge."  *In re Hudson*, 420 B.R. at 86 (citations and footnote omitted).  Thereafter, the bankruptcy court discussed all decisions that the July 9, 2007 ruling could have impacted and found that none of the district court's decisions would have impacted its decision to deny discharge.  *See id.* at 88.

Contrary to Mr. Hudson's contentions, the bankruptcy court properly interpreted the scope of the Court's remand.  Moreover, the Court notes that, despite the limited nature of the remand, the bankruptcy court, in a very thorough and well-reasoned decision, addressed the merits of all of Mr. Hudson's arguments.

Likewise, the Court will also address Mr. Hudson's arguments regarding issues beyond the scope of the remand.

**C.     The effect of this Court's decisions in *Hudson v. Corvetti*, 1:06-CV-537 and *Corvetti v. Hudson*, Nos. 1:05-CV-472 and 1:05-CV-560 on the bankruptcy court's decision to deny discharge**

Following the proceedings before the bankruptcy court, the following issues reached this Court on appeal.  In *Hudson v. Corvetti*, No. 1:06-CV-537, this Court affirmed the bankruptcy court's February 15, 2006 Memorandum-Decision and Order, in which the bankruptcy court held that the Settlement Agreement was valid.  However, in *Corvetti v. Hudson*, No. 1:05-CV-472 and 1:05-CV-560, this Court reversed the bankruptcy court's March 17, 2005 Order, in which the bankruptcy court held that Mr. Corvetti was entitled to oppose Mr. Hudson's section 727 discharge despite the Settlement Agreement's non-opposition provision.  Therefore, on July 9, 2007, the Court declared that "Appellee Corvetti cannot oppose Appellant Hudson's discharge pursuant to the Settlement Agreement . . . ."  *Corvetti v. Hudson*, Nos. 1:05-CV-472, Dkt. No. 45 at 10; 1:05-CV-560, Dkt. No. 11 at 10.

Section 727(a)(4)(A) of Title 11 of the United States Code provides, in relevant part, that "(a) The court shall grant the debtor a discharge, unless . . . (4) the debtor knowingly and fraudulently, in or in connection with the case – (A) made a false oath or account[.]"  11 U.S.C.

§ 727(a)(4)(A).  There is no question that the extraordinary relief that the Bankruptcy Code

affords is intended to be available only to the honest debtor.  *See In re Taylor*, 190 B.R. 413, 416

(Bankr. D. Colo. 1995); *Hage v. Joseph (In re Joseph)*, 121 B.R. 679, 681 (Bankr. N.D.N.Y.

1990).  Section 727 is "a blanket prohibition of a debtor's discharge" under certain specific

circumstances, "thereby protecting the debts owed to all creditors."  *State Bank of India v.

Chalasani (In re Chalasani)*, 92 F.3d 1300, 1309 (2d Cir. 1996).  Since section 727 imposes an

extreme penalty against wrongdoing, it is construed liberally in favor of the bankrupt; and

special procedural rules govern section 727 cases.  *See id.* at 1310 (citation omitted).

 In general, a bankruptcy court has broad authority to approve or disapprove all

settlements impacting the bankruptcy estate.  *See In re Bates*, 211 B.R. 338, 343 (Bankr. D.

Minn. 1997).  Rule 9019(a) of the Federal Rules of Bankruptcy Procedure authorizes a

bankruptcy court to approve a compromise or settlement in a case upon the trustee's motion and

after notice and hearing.  *See* Fed. R. Bankr. P. 9019(a).  However, as the Advisory Committee's

Note to Rule 7041 states,

> [d]ismissal of a complaint objecting to a discharge raises special
> concerns because the plaintiff may have been induced to dismiss
> by an advantage given or promised by the debtor or someone
> acting in his interest.  Some courts by local rule or order have
> required the debtor and his attorney or the plaintiff to file an
> affidavit that nothing has been promised to the plaintiff in
> consideration of the withdrawal of the objection.  By specifically
> authorizing the court to impose conditions in the order of dismissal
> this rule permits the continuation of this salutary practice.

Fed. R. Bankr. P. 7041 advisory committee's note.

 In light of these "special concerns," bankruptcy courts have, not surprisingly, been

divided over whether compromise or settlement is allowed in a § 727 action.  *See Bankr.*

*Receivables Mgmt. v. de Armond (In re de Armond)*, 240 B.R. 51, 56 (Bankr. C.D. Cal. 1999) (allowing settlement if its terms are fair and equitable and in the best interests of the estate (citations omitted)); *Migoscha, S.A. v. Meffert (In re Meffert)*, 232 B.R. 71, 73 (Bankr. S.D.N.Y. 1998) (not allowing settlement because local rules required debtor to certify that it had not given consideration for withdrawal of complaint); *Bates*, 211 B.R. at 348 (allowing settlement in some circumstances and finding that *per se* rule against settlement not appropriate); *Bank One, Crawfordsville, NA v. Smith (In re Smith)*, 207 B.R. 177, 178 (Bankr. N.D. Ind. 1997) (not allowing settlement where action settled in return for private benefit and successful prosecution would benefit entire creditor body); *Tindall v. Mavrode (In re Mavrode)*, 205 B.R. 716, 720 (Bankr. D.N.J. 1997) (allowing settlement where court determines that it is fair and equitable); *In re Wilson*, 196 B.R. 777, 780 (Bankr. N.D. Ohio 1996) (same); *Moister v. Vickers (In re Vickers)*, 176 B.R. 287, 290 (Bankr. N.D. Ga. 1994) (not allowing settlement as against public policy); *In re Moore*, 50 B.R. 661, 664 (Bankr. E.D. Tenn. 1985) (same).  The majority of bankruptcy courts that have considered this issue have concluded that a bankruptcy court may approve the compromise or settlement of a section 727 complaint if the settlement is fair and equitable and in the best interests of the estate.  *See de Armond*, 240 B.R. at 56 (citations omitted).

In the present matter, however, the issue is not whether the debtor and creditor may settle the section 727 objection to discharge, but whether a settlement, which occurs after the bankruptcy court **and** the district court have already determined that the debtor was not entitled to discharge because of his fraudulent conduct, presents circumstances that would justify vacating the bankruptcy court's decision denying discharge.  Moreover, the Court must

-21-

determine whether the Settlement Agreement's non-opposition clause, which provides that Mr.

Corvetti, the creditor, will not oppose Mr. Hudson's, the debtor, appeal of the bankruptcy court's

decision denying discharge, has any effect on the bankruptcy court's decision to deny discharge.

     In *Speece*, the bankruptcy court addressed a nearly identical factual situation and

concluded that the debtor should not be granted discharge. *See Jacobson v. Robert Speece*

*Props., Inc. (In re Speece)*, 159 B.R. 314, 316 (Bankr. E.D. Cal. 1993) (answering the question

of whether "a debtor [may] purchase a chapter 7 discharge in settlement of an appeal from a

judgment denying discharge").  In *Speece*, the plaintiff established at trial that the debtors

concealed real and personal property with intent to hinder and defraud creditors.  *See id.*

Morever, the trial established that the debtors knowingly and fraudulently made false oaths in,

among other things, their statements of financial affairs.  *See id.*  Before the court issued a

decision on the debtors' appeal of the bankruptcy court's discharge denial, the parties agreed to

settle on terms that called for a transfer of property to the plaintiff and for the plaintiff "to

stipulate to vacating the judgment denying the discharge and dismissing the adversary

proceeding with prejudice so that the debtors would receive a discharge." *Id.*

     First, the court noted that the law-of-the-case doctrine dictated that, as a matter of law,

the debtors were not entitled to a discharge "because they made false oaths and, independently,

because they concealed property." *Id.* at 321.  Thereafter, the court noted that the denial of a

discharge is a public act of a public official and, therefore, "[p]ermitting parties to bargain to

vacate the judgment denying discharge would discourage pretrial settlements and would confer

an inappropriate windfall on the winning party in the form of an opportunity to gain a more

favorable settlement by selling off the public advantages of the judgment." *Id.* (citation

omitted).  Next, the court discussed both parties' hardships if a court granted or denied discharge and noted that this factor weighed in favor of denying discharge in cases arising under section 727 because "discharge in bankruptcy should be granted only to those who are entitled to it."  *Id.* Finally, the court noted that "[b]alancing the competing values of finality of judgment and right to relitigation of unreviewed disputes easily resolves itself against vacatur."  *Id.* at 322.

> Moreover, permitting vacatur of a judgment denying discharge in response to return of concealed property would create the wrong incentive.  It would become worthwhile to hide property at the time of filing bankruptcy in the expectation that, if the debtor loses any ensuing objection to discharge litigation, the discharge could be retrieved by handing over the hidden property.

*Id.*[8]

In the present matter, Mr. Hudson's primary argument for granting him a discharge and vacating the bankruptcy court's 2001 decision is that all claims have now been settled.  This argument, however, disregards the fact that the decision to deny him discharge was not to protect his creditors but was, in fact, a form of punishment.  *See Latman v. Burdette*, 366 F.3d 774, 782 (9th Cir. 2004) (citations omitted).  As the bankruptcy court aptly pointed out, "[s]uch a paradigm potentially frustrates the finality of judgments and suggests the commoditization of

---

[8] The *Speece* court also held that

> [w]aiting until after the discharge is denied is waiting too long.  Once a judgment is entered denying discharge, vacatur of judgment on account of subsequent settlement that calls for transfer of property that was concealed with the intent penalized by section 727(a)(2)(A) is not appropriate.  Where the judgment is also premised on false oaths made with the intent penalized by section 727(a)(4)(A), a vacatur is even more inappropriate.

*In re Speece*, 159 B.R. at 323.

justice." *In re Hudson*, 420 B.R. at 90.  Vacatur is not warranted simply because no one opposes

the present application and because Mr. Hudson has now fully informed the court and parties of

all available assets.  The *Speece* court provides persuasive arguments as to why this Court should

not grant Mr. Hudson the relief he seeks.

Mr. Hudson is effectively attempting to contract away this prior unfavorable decision.

The bankruptcy court correctly noted that "allowing such an occurrence would be in direct

contravention of the Supreme Court's holding in *Bancorp* that judicial determinations are not the

property of the parties."  *In re Hudson*, 420 B.R. at 91.  The bankruptcy court properly relied on

*Bancorp* to find that no "exceptional circumstances" were present to justify the post-trial vacatur

of the court's prior order.  Although vacatur of a decision denying discharge may be justified in a

situation where serious doubts as to the correctness of the first decision are raised, Mr. Hudson

has not raised any such doubts.

Moreover, Mr. Hudson seems to be operating under the assumption that this Court's

remand to the bankruptcy court implied that he was now, in fact, entitled to this relief.  However,

the Court's remand specifically stated that the bankruptcy court was "to determine in the first

instance what effect, ***if any*** the District Court's subsequent decisions" had on the bankruptcy

court's 2001 decision denying Mr. Hudson discharge.  *Hudson*, No. 1:06-CV-253, Dkt. No. 20 at

5 (emphasis added).  The Court remanded the matter because the bankruptcy court was in the

best position to determine the impact of these subsequent decisions on its previous decision.  The

Court did not imply that equity demanded such relief or, for that matter, whether the law would

even permit such relief.

Further, as the bankruptcy court correctly observed, Mr. Hudson has failed to present

any new evidence (assuming that he could introduce such evidence) and has further failed to present "any other reason that justifies relief" as Rule 60 of the Federal Rules of Civil Procedure requires.

Finally, the Court is mindful of the Supreme Court's statement in *Bancorp* that, when federal courts contemplate equitable relief, they "must also take account of the public interest." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26 (1994). Based on the record, the Court concludes that the public interest would not be served by vacating the bankruptcy court's 2001 decision in which it found that Mr. Hudson committed a fraud on the court simply because Mr. Hudson subsequently revealed the property he concealed and settled his creditors' claims. As such, the Court affirms the bankruptcy court's thorough and well-reasoned decision.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the bankruptcy court's November 17, 2009 Memorandum-Decision and Order denying Mr. Hudson discharge from bankruptcy is **AFFIRMED**.

**IT IS SO ORDERED.**

Dated: March 10, 2011
        Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge